Andrew J. Peters, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 54050. Promulgated August 8, 1933.

*Harold L. Clark, Esq.,* for the petitioner.
*Henry A. Cox, Esq.,* for the respondent.

OPINION.

GOODRICH: It may be fairly inferred from the records that petitioner, perhaps because discouraged concerning the prospects of profitable continuance of Mason, Inc., decided to liquidate his investment in a stock which had depreciated in value in order that he might, by application of the loss thus sustained, reduce his income, and consequently his tax thereon. But, if incurred in a bona fide transaction, a loss is not to be disallowed merely because it was deliberately sustained as a means of reducing tax liability. *United States* v. *Isham*, 84 U.S. 496; *Bullen* v. *Wisconsin*, 240 U.S. 625; *Weeks* v. *Sibley*, 269 Fed. 155; *Nace Realty Co.*, 28 B.T.A. 467. Respondent suggests that because of the relationship existing between vendor and purchaser, the transaction here was not a valid, effective and bona fide sale, and therefore the loss resulting from the purported disposition of the property should not be recognized nor allowed as an offset against petitioner's income. It is true that transactions between persons closely related offer an opportunity for fraud and for that reason the circumstances surrounding their dealings must be closely scrutinized, *P. B. Fouke*, 2 B.T.A. 219, but we are satisfied that there is no merit in respondent's suggestion respecting the case at bar. This transaction was not effected by a secret arrangement between husband and wife. This was a sale of stock at an open auction, conducted by a recognized dealer after public advertisement. While it is true that the wife knew the stock was to be sold and discussed with her husband the advisability of buying it, the proof is that her purchase resulted from the acceptance of a bid for the stock made for her at the auction by a representative of the firm conducting the sale, and that if her offer had been exceeded, the higher bidder would have obtained the stock. We are convinced that petitioner intended to, and did, part company with his property, with no strings attached by which to retrieve it, and that, so far as concerns the bona fides of the transaction, he effected a valid disposition of the stock, regardless of the identity of the purchaser. *Oscar F. C. Kunau et al., Trustees*, 27 B.T.A. 509.

The ground upon which respondent based his determination and upon which he now maintains his position is that, under the laws of the Commonwealth, a married woman is under the common law disability respecting her power to contract with or receive property from her husband and, consequently, this transaction is a void attempt by petitioner to transfer property to his wife and did not effect a disposition of the stock upon which a loss may be recognized. He tells us that the law of Massachusetts respecting the matter is well settled; that there a married woman may not contract with her husband, nor transfer to him, nor receive from him, any property,

whether real or personal, except as a gift under certain circumstances and in a limited amount; that, as between husband and wife, the common law disabilities of the married woman prevail, and attempted contracts and transfers between them are void, citing sec. 2, ch. 209, General Laws of Massachusetts; *Kniel* v. *Egleston*, 4 N.E. 573; *Gahm* v. *Gahm*, 137 N.E. 876; *Porter* v. *Wakefield*, 14 N.E. 792.

But an examination of the Massachusetts statutes and of the decisions of her courts reveals that the strict bar against transfers of property between husband and wife does not now exist as respondent would have us believe, but has been largely removed by legislative enactment since the decision in *Porter* v. *Wakefield*, *supra*, upon which he much relies. Chapter 304, Acts of 1912, provides that " husband and wife may make conveyances of real estate to each other  *  *  *   as if unmarried," and chapter 478, Acts of 1920, provides that " gifts of personal property between husband and wife shall be valid to the same extent as if they were sole." The section preceding that which respondent, upon brief, calls to our attention, namely, section 1 of chapter 209, General Laws, provides in part:

* * * a married woman may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if she were sole.

Section 3 of the same chapter provides that " gifts of personal property, and conveyances of real estate  *  *  *   between husband and wife, shall be valid to the same extent as if they were sole." Clearly, the restrictions formerly existing and upon which respondent relies, prohibiting the transfer of property between husband and wife, have been done away with, and it remains to be determined whether the transaction here involved was a contract between such parties, which is still barred, or a disposition of property such as the law of the Commonwealth would permit.

Petitioner contends that the transaction was a completed and valid sale of stock between husband and wife. A sale is defined by the statute as " an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price " (sec. 3, ch. 106, General Laws of Massachusetts). Section 4 of the same chapter provides: " The capacity to buy and sell shall be determined by the general law concerning the capacity to contract and to transfer and acquire property." In view of these statutory provisions it is apparent that, if this transaction was a contract between husband and wife, it was void, for husband and wife may not contract, but that if it was a transfer of property between them—a sale—it was valid.

In our opinion, the transaction was a sale, a transfer of property, as distinguished from an executory contract to sell, and was not void.

.

The effect and finality of a completed transfer of property directly between husband and wife, whether by sale or by gift, has been recognized. *Homes* v. *Winchester*, 133 Mass. 140; *Atkins* v. *Atkins*, 195 Mass. 124; *Lyon* v. *Wallace*, 221 Mass. 351; *Hamilton* v. *Commissioner*, 24 Fed. (2d) 668, reversing 7 B.T.A. 362; *Tucker* v. *Curtin*, 148 Fed. 929; 207 U.S. 603; *Young* v. *Young*, 251 Mass. 218; *Woodward* v. *Woodward*, 216 Mass. 1. This is particularly true of shares of stock—see *Bingham* v. *White*, 31 Fed. (2d) 574, and 25 Fed. (2d) 837. This was a case arising in Massachusetts and involving the determination of Federal estate tax liability, wherein the validity of stock transfers made directly from husband to wife was upheld, the court saying:

Because of the peculiar nature of corporate shares it has generally been held that the transfer of the certificate, followed by a transfer on the books of the corporation, and the issuance of a new certificate in the name of the transferee was sufficient to invest the latter with full title to the shares transferred.

Here, the proof is that the several acts enumerated in the decision cited were accomplished and, under the rule of that case, which we consider controlling, petitioner effected a valid transfer of the stock to his wife. See also sec. 27, ch. 155, Massachusetts General Laws (Uniform Stock Transfer Act). Since the transfer was made for a valuable consideration which was paid, it was a sale of the stock, upon which the loss sustained must be recognized.

Moreover, even if transfers of property directly between husband and wife were still prohibited as respondent contends, nevertheless, this transfer would be made effective by novation—by the intervention of a third party, either the broker or the corporation reissuing the certificates. *Tucker* v. *Curtin, supra; Talbot* v. *Talbot*, 32 R.I. 72; *Bingham* v. *White, supra; Brown* v. *Brown*, 174 Mass. 197; *Motte* v. *Alger*, 15 Gray. 322.

We conclude that petitioner effectively disposed of his shares of the stock of Mason, Inc., in a valid, bona fide sale. The amount of the loss sustained therefrom is not in dispute, nor is the fact that petitioner had held the stock for more than two years. Therefore the capital loss should be applied as provided in section 101, Revenue Act of 1928.

*Judgment will be entered for the petitioner.*