J. D. BIGGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16322.   Promulgated April 30, 1930.

*Paul E. Hutchinson, Esq.*, for the petitioner.
*W. F. Gibbs, Esq.*, for the respondent.

### OPINION.

Murdock: Pursuant to a general plan the petitioner contributed to the syndicate formed for the purpose of acquiring certain oil leases, which were later transferred to a corporation organized to operate under the leases. Shares of stock of the corporation were distributed to the members of the syndicate in proportion to their respective interests in the syndicate. The petitioner contends that this was a continuing transaction and in effect a purchase of shares of stock in the corporation.

So-called continuing transactions, involving separate and distinguishable steps in a general plan, have been considered by us in cases resulting from the merging or reorganizing of corporations. In the case of *William H. Mullins*, 14 B. T. A. 426, we said:

It may be conceded that the purpose and plan of this transaction was a reorganization of the Old Company, but that fact is not determinative of the question here nor is it of any special significance. We are concerned only with whether or not the petitioner received * * * shares of * * * stock in the New Company, plus cash, in exchange for stock in the Old Company, within the meaning of the Act. And this question must be resolved upon what was actually done, and not the effect of what was done (B. F. Saul, 4 B. T. A. 639, 647), nor upon what may have been the design and purpose of the parties to the transaction (*United States* v. *Phellis*, 257 U. S. 156, 172). Neither is it material that the same result might have been obtained by some other method or plan of reorganization. In the case of *Anna M. Harkness*, 1 B. T. A. 127, 130, we said: "It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. *United States* v. *Isham*, 17 Wall. 496."

Speaking generally, in determining what was actually done in any case, this Board will regard substance rather than form. However, material and essential facts will not be dismissed or put aside as mere matters of form simply because they are related to and are steps in a comprehensive plan of reorganization, or together constitute a method of the attainment of a single desired

result. *Edward A. Langenbach,* 2 B. T. A. 777, 784. In the instant case each step employed to bring about the ultimate result was essential to the consummation of the transaction and it can not be said that each, or any one, was not substantial.

\* \* \* \* \* \* \*

\* \* \* The fact that these several transactions together comprised a single plan of reorganization does not render them any the less separate and distinct undertakings. The nature of each transaction is determinable from the facts relating to it, and is not changed because of its association with other transactions in a larger and more comprehensive plan.

The petitioner's contribution of $1,200 to the syndicate, by which he acquired a direct interest in the oil leases, was a distinct step in the general plan, and, even though in contemplation of the ultimate receipt of shares of stock in the operating company, constituted a closed transaction at least for tax purposes. *Edward A. Langenbach,* 2 B. T. A. 777; *B. F. Saul,* 4 B. T. A. 639; *William H. Mullins, supra.* Cf. *A. J. Siegel,* 4 B. T. A. 186; affd., 25 Fed. (2d) 1022; *J. A. Staley,* 9 B. T. A. 932; *T. B. Noble,* 12 B. T. A. 1419; affd., 5th Cir., C. C. A., Oct. 21, 1929.

Later, the oil leases were exchanged for 2,393 shares of stock which were distributed to the members of the syndicate in proportion to their contributions; the petitioner received 184 shares of the stock. The case of *John B. Murphy,* 8 B. T. A. 416, involved this same transaction. The evidence there presented as to the value of the stock was substantially the same as that now before us. In that case we said:

The respondent has determined that the fair market value of the shares of stock received was $20 per share and has computed a profit of $2,480 from the transaction. The basis for this computation is the sale by the syndicate to the syndicate members and their friends of shares of stock at the price indicated. We have no evidence that the petitioner could not readily have sold his shares of stock at a price of $20 per share at the date of receipt. For lack of proof that the respondent erred in his determination that the fair market value of the shares was $20 per share at date of receipt, the determination of the respondent upon this point is approved.

Section 202 (b) of the Revenue Act of 1918 provides that:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; \* \* \*.

We accordingly hold that the purchase by the petitioner of an interest in the syndicate and the subsequent exchange of that interest for shares of stock in the corporation resulted in taxable gain as found by the respondent. *E. C. Huffman,* 1 B. T. A. 52; *V. J. Bulleit,* 3 B. T. A. 631; *Napoleon B. Burge,* 4 B. T. A. 732; *Douglas F. Fesler,* 13 B. T. A. 1356; 38 Fed. (2d) 155; *R. V. Board,* 14

B. T. A. 374; *Edward H. Mount*, 16 B. T. A. 847; *Cullinan* v. *Walker*, 262 U. S. 134.

Reviewed by the Board.

*Judgment will be entered for the respondent.*